NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-mj-00181** |
| v. | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **JAMES DUNN JR.** and **JOSHUA CLAY WILFONG,** | |
| Defendants. | |

The United States of America, through Natalie K. Wight, United States Attorney for the

District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court

to detain the defendants pending arraignment and trial.

The defendants were running a vast illegal drug operation responsible for the

manufacture and distribution of hundreds of thousands of counterfeit M30 pills manufactured

with fentanyl within the greater Portland/Vancouver area. The defendants' criminal enterprise

has direct connections to other criminal organizations operating in Mexico and Southern

**Government's Motion for Pretrial Detention**                                    **Page 1**

California.  The defendants are both a risk of non-appearance at future court proceedings and a danger to the community and should be detained pending trial.

**A.      Factual and Procedural Summary.**

Defendants are currently charged in a Criminal Complaint with engaging in a Conspiracy to Manufacture, Distribute, and Possess with the Intent to Distribute a Controlled Substance (fentanyl), and Possession with the Intent to Distribute a Controlled Substance (fentanyl), all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846.  The charge carries with it a mandatory minimum sentence of 10 years' imprisonment and a maximum term of Life imprisonment.

Since May 2021, investigators with the U.S. Department of Homeland Security Investigations (HSI) and the Clackamas County Interagency Task Force (CCITF), with the assistance of the Federal Bureau of Investigation (FBI) and Clark County Sheriff's Office, have been investigating a Drug Trafficking Organization (DTO) run by DUNN and WILFONG that is responsible for manufacturing and distributing hundreds of thousands of counterfeit M30 Oxycodone pills manufactured with fentanyl (fentanyl pills) within the greater Portland, Oregon/Vancouver, Washington area.

The investigation revealed that DUNN, one of the leaders of the DTO, is responsible for smuggling fentanyl from Mexico into the United States to be used as active ingredient in the production of these fentanyl pills.  Investigators have learned that DUNN purchased fentanyl in Mexico and arranged for the fentanyl to be smuggled into the U.S.  DUNN also coordinated the transportation of fentanyl, once it made it across the border into California, into the District of Oregon and Washington.  Investigators learned that DUNN would then provide WILFONG, the other leader of the DTO, with the fentanyl and WILFONG would then use the fentanyl as the

**Government's Motion for Pretrial Detention**                                                    **Page 2**

active ingredient in the production of counterfeit Oxycodone M30 pills (fentanyl pills).  Through this investigation agents have learned that WILFONG manufactured hundreds of thousands of pills for purposes of further distribution.  Once the pills were ready to be distributed, customers would call or text DUNN and order a specified amount of pills for a predetermined cost.  Once the pill order is placed, DUNN, at times, would personally deliver the pills and complete the transaction.  Investigators have used a confidential informant and undercover agent to purchase more than 8,000 fentanyl pills from both DUNN and WILFONG.

On October 12, 2022, WILFONG and DUNN were arrested while they were in the process of negotiating a deal to supply 300,000 fentanyl pills to two confidential informants who were working with law enforcement agents.  Inside WILFONG's vehicle agents seized approximately 10,000 counterfeit M30 Oxycodone pills suspected of being manufactured with fentanyl.  Inside DUNN's vehicle agents seized approximately $50,000 in cash.  As part of the negotiations and prior to their arrest, DUNN and WILFONG took the informants to their "laboratory" in Vancouver, Washington where WILFONG maintained a storage unit containing a pill press and the equipment he used to manufacture the counterfeit pills.  During the visit, WILFONG opened a safe and showed the informants a large quantity of pills.

After their arrest, a search warrant was executed on the storage unit and agents located the pill press and lab equipment.  Agents also located the safe that WILFONG pointed out to the informants.  In executing the search warrant, agents noted that the pill press, lab equipment, and storage unit were all coated in a fine dust, believed to be fentanyl powder generated from the manufacture of pills.  Due to extreme health and safety concerns agents locked down the storage unit and are bringing in a hazmat crew to continue processing the scene.  Binding agents and blue powder for manufacturing the pills was also seen inside the storage unit.  During their brief

search of the storage unit search agents found notes documenting prior manufacturing runs of

pills.  WILFONG told an informant that he regularly ran test batches of pills in an effort to

perfect the potency and form of the pills.  DUNN told an informant that he has made deals

selling hundreds of thousands of pills and that he regularly sold 10,000 pills a week.  Pictures of

the seized pills and lab equipment are below.







The defendants ran a sophisticated drug trafficking operation that was responsible for the manufacture and distribution of hundreds of thousands of counterfeit M30 fentanyl pills right here in our community.  The scope of addiction and destruction these two are responsible for is truly astronomical.  The government seeks the defendants' detention as a danger to the community and a risk of nonappearance.

///

///

///

**Government's Motion for Pretrial Detention**                                        **Page 5**

B.    **Applicable Law.**

    1.    **Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

    2.    **Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). All three of the defendant's criminal charges in this case independently create a presumption of pretrial detention.

**Government's Motion for Pretrial Detention**                                               **Page 6**

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community.  The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence.  This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union.  **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses.  The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances.  It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity.  Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it

**Government's Motion for Pretrial Detention**                                                    **Page 7**

remains an evidentiary factor to be evaluated.  *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989).  Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985).  To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt.  *Id.*  Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute.  *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1)     the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including –

**Government's Motion for Pretrial Detention**                                          **Page 8**

(A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## C.     Factors Supporting Detention.

The defendants should be detained pending trial as both a danger to the community and a risk of nonappearance.  The defendants were active and prolific drug dealers who were directly responsible for manufacturing hundreds of thousands of the fentanyl pills that have been wreaking such death and destruction within the community.  The defendants' criminal conduct, both past and current, clearly shows that they are a danger to the public and that they will not abide by the law.  The defendants were huge drug dealers – pure and simple.  It is how they made their money.  It would be unrealistic to hope that following their arrests the defendants will now follow the Court's orders or that anything short of pretrial detention will prevent them from unleashing further destruction within the community.

### 1.     Nature and Circumstances of the Offense.

The defendants made and sold the tools of addiction, destruction and death. Tragically, almost every week we read and hear about people who are being poisoned and dying from fentanyl – kids and adults – who are buying and using counterfeit M30 pills that are manufactured with fentanyl.  The devastation that results from the manufacture, distribution, and

**Government's Motion for Pretrial Detention**                                    **Page 9**

use of these counterfeit pills is truly astonishing – and the defendants were major contributors to it.

Before their arrest, defendants were both active drug dealers working together to bring fentanyl from Mexico and Southern California into Oregon and Washington and then using it to manufacture and sell counterfeit fentanyl pills.  Drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases.  Dealers like the defendant make their living from drug dealing and are prone to go back to it when they are released from custody.  To release these defendants risks allowing them to start up again where they left off on October 12, 2022 – selling pills where every single pill sold could kill another person.

The nature and circumstances of the offense warrant the defendants pretrial detention.

**2.      Weight of the Evidence.**

The weight of the evidence against the defendants is extremely strong and supports their continued detention.  The defendants sold counterfeit M30 pills to both a confidential informant and an undercover agent.  In numerous meetings with an informant and undercover agent the defendants discussed the scope of their illegal operation.  On October 12, 2022, the defendant were caught with 10,000 fentanyl pills and a large amount of cash, after they took two informants to their clandestine lab they used to manufacture counterfeit fentanyl pills.  They should be detained.

**3.      History and Characteristics of the Defendant.**

The history and characteristics of the defendants also warrants their pretrial detention. The defendants were active drug dealers with prior felony convictions.  A firearm was also seized from WILFONG's residence, along with approximately $34,000 in cash.  DUNN has

traveled to Mexico multiple times and claims to have a residence in Mexico.  WILFONG was

caught with approximately 10,000 fentanyl pills in his vehicle.  DUNN was caught with

approximately $50,000 in cash.  Prior supervision has done nothing to deter the defendants'

conduct and their history and characteristics necessitate pretrial detention.

    **4.**      **Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious.  These

defendants are responsible for manufacturing and selling hundreds of thousands of counterfeit

fentanyl pills and each pill they sold could kill.  Given the presumption of detention that comes

along with the charges, Congress has recognized the very serious risk that drug dealers like the

defendant pose to the community and their risk of going back to drug dealing even while on

pretrial release.  Drug dealers selling fentanyl, which is killing large numbers of our fellow

citizens, pose an unacceptable risk to the community and they should be detained.  There is

simply no condition or combination of conditions that the Court will impose that will mitigate

the risk that the defendants' distribution of fentanyl poses to the community.  One death from

fentanyl is far too much and the defendants should be detained.

**Conclusion**

For the reasons set forth herein, we respectfully request that the Court continue to detain

the defendants pending their arraignment and trial and find they poses an unacceptable risk of

non-appearance at future court hearings and that they are a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that
  no combination of conditions will (1) reasonable assure the safety of the
  community and (2) reasonably assure the appearance of the defendants as
  required.

**Government's Motion for Pretrial Detention**                                    **Page 11**

- The defendants have not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendants' illegal trafficking of fentanyl, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendants were released.

- Due to the weight of the evidence and the defendants' personal history and characteristics, including the potential penalties they are facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendants at future court hearings as required if released from custody.

Based upon the above findings, the defendants should be detained pending trial.

Dated:  October 13, 2022.                          Respectfully submitted,

                                                   NATALIE K. WIGHT
                                                   United States Attorney


                                                   /s/ *Scott Kerin*
                                                   _____
                                                   SCOTT M. KERIN, OSB # 965128
                                                   Assistant United States Attorney

**Government's Motion for Pretrial Detention**                          **Page 12**